UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------x

ESIN AYDINOGLU, MICHAEL POUPALOS, and JUDITH PEREZ-TOMAX,

                            Plaintiffs,

              -against-

TWO WAYS REST., INC, JOHN ARGENAS *individually*, ILIAS ARGENAS *individually*, and ATHANASIOS MAVRIKIS *individually*,

                            Defendants.

----------------------------------------------x

**COLLECTIVE
ACTION COMPLAINT**

Case No.: _____

PLAINTIFFS DEMAND
A TRIAL BY JURY

Plaintiffs, Esin Aydinoglu, Michael Poupalos, and Judith Perez-Tomax, by their attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

## NATURE OF THE CASE

1. Plaintiffs, individually and on behalf of all other similarly situated current and former Servers, Bus Boys and Cashiers of Defendants, brings this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay wages due and owed for hours employees were required to report to work, ready to perform work and actually performed work duties, and seeks to recover unpaid back wages, unpaid minimum wage, illegally withheld deductions, unpaid overtime, an additional amount as liquidated damages, reasonable attorneys' fees and costs.

2. Plaintiffs also claim that they were not provided the proper notices and statements under New York Labor Law §§ 190 *et seq.*

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29

U.S.C. §2617.

4. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

5. Venue is proper in this district based upon Defendant Two Ways Rest., Inc.'s ("Two Ways") residency within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6. That at all times relevant hereto, Plaintiffs Esin Aydinoglu ("Esin"), Michael Poupalos ("Michael"), and Judith Perez-Tomax ("Judith") (collectively "Plaintiffs") are residents of the State of New York in Queens and Kings Counties.

7. Plaintiffs were, during all relevant times, employees for Defendant Two Ways and the individual Defendants.

8. That at all times relevant hereto, Defendant Two Ways was a Domestic Business Corporation duly authorized and existing by virtue of the laws of the State of New York with its principal place of business located at 145 West 47th Street, New York, New York.

9. Defendant John Argenas was the President of Defendant Two Ways, an owner of Defendant Two Ways and acted as an employer as he controlled the terms of conditions for all Plaintiffs and Class Plaintiffs throughout their employment.

10. Defendant Ilias Argenas, is an Owner of Defendant Two Ways, lives in Flushing, Queens, was the Vice President of Defendant Two Ways, and acted as an employer as he controlled the terms of conditions for all Plaintiffs and Class Plaintiffs throughout their employment.

11. Defendant Athanasios Mavrikis is an owner of Defendant Two Ways, lives in Flushing, Queens and acted as an employer as he controlled the terms of conditions for all Plaintiffs and Class Plaintiffs throughout their employment.

12. That at all times relevant hereto, Defendants John Argenas, Ilias Argenas and Athanasios Mayrikis were supervisors and/or had supervisory authority over Plaintiffs and all other Class Plaintiffs.

13. Defendant Two Ways and Defendants John Argenas, Ilias Argenas and Athanasios Mayrikisare are referred to herein as "Defendants."

## THE FLSA CLASS

14. While class certification pursuant to FRCP Rule 23 is not required for an FLSA collective action, defining the class of eligible FLSA Plaintiffs is useful, as the Court will be asked to order Defendants to produce the names and addresses and other information of potential opt-in Plaintiffs.

15. The class of eligible opt-in Plaintiffs consists of all persons who worked for Defendants as "Servers", "Cashier" and "Bus-Boys" at any time from three (3) years prior to the filing of this case, to entry of judgment in this case (the "Class" and "Class Period," respectively).

16. Each of these positions was a "tipped" position and, upon information and belief, received less than the full hourly wage from Defendants.

17. Although the precise number of putative class members is unknown, and facts upon which the calculation of that number is based are presently within the sole control of Defendants, upon information and belief, there are over ten (10) members of the Class who worked for Defendants within the Class Period.

18. There are questions of law and fact common to this Class which predominate over any questions solely affecting individual members of the Class, including whether Defendants failed to compensate employees at any rate for hours employees were required to be at work, performing work and traveling to and from job sites; whether each employee was paid overtime in weeks when they worked over forty (40) hours; and, whether each

3

employee was given the tips to which they were entitled for their work. Often, the hourly rate was less than the minimum wage.

19.    Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs will fairly and adequately protect the interests of the Class.

20.    A collective action is superior to other methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

21.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

22.    At all times relevant to this action, Plaintiff and other Class Plaintiffs were employed by Defendants within the meaning of the FLSA.

23.    At all times relevant to this action, Defendants transacted and transacts commerce and business in excess of $500,000.00 annually or has revenues in excess of $500,000.00 annually, for all applicable periods in question. Further, Plaintiffs were directly involved in interstate commerce as they were involved in the processing of credit card transactions.

24.    At all times relevant to this action, Defendants willfully failed to pay all Plaintiffs and other Class Plaintiffs for time which Class Plaintiffs are required to be at work and ready to work and performing work but were paid below the minimum wage in violation of the FLSA. Plaintiffs were also not paid the overtime premium for hours worked in excess of forty (40) each week. Defendants also deducted money from Plaintiffs' pay for days they were sick or absent illegally.

4

25. At all times relevant to this action, due to Defendants' FLSA violations, Plaintiffs and other Class Plaintiffs are entitled to recover from Defendants their unpaid wages, an additional equal amount as liquidated damages, attorneys' fees, and costs of the action, pursuant to 29 U.S.C. §216(b).

## MATERIAL FACTS

26. At all times relevant hereto Defendant Two Ways operated a restaurant called the Evergreen Diner located at 145 West 47th Street, New York, New York 10036.

27. Plaintiff Esin Aydinoglu ("Esin") was hired by Defendants in or around August of 2015 as a Server.

28. Throughout Plaintiff Esin's employment, her work product was excellent and she was never disciplined for her performance.

29. Throughout Plaintiff Esin's employment she worked approximately five (5) shifts each week.

30. Plaintiff Esin's shifts lasted eight (8) hours and started at either 11:00 AM until 7:00 PM or from 7:00 AM until 3:00 PM.

31. Plaintiff Esin worked in a position wherein she was tipped, however, she was never provided notice that Defendants intended to take a tip credit.

32. Plaintiff Esin also did not get a wage notice when she started working for Defendants or at any time throughout her employment.

33. Plaintiff Esin received forty dollars ($40.00) in cash each week with a pay stub that included her hours and a claim that she would be paid $7.50 per hour for each hour worked.

34. Despite the pay stub stating that she was being paid the full $7.50 an hour, Plaintiff Esin only received small cash payments never exceeding forty dollars ($40.00).

35. In weeks that Plaintiff Esin worked fewer than five (5) shifts, Plaintiff Esin would receive twenty five dollars ($25.00) rather than forty dollars ($40.00) because she had missed a shift.

5

This was an illegal deduction.

36. Plaintiff Esin approached Defendant John Argenas about this but he indicated that he did not know why the pay stub stated something other than what she was getting.

37. Plaintiff Esin later approached Defendant Ilias Argenas to ask why she was not getting her regular check as indicated on the pay stub. Defendant Ilias Argenas told Plaintiff Esin that if she did not like it "the door is open," indicating that she could leave if she did not want to get paid less than the minimum wage.

38. The individual Defendants would respond to complaints of almost any kind by telling the Plaintiffs that they could leave if they did not like how things were done.

39. Plaintiff Michael began working for Defendants in or around May of 2013 as a Server.

40. Throughout Plaintiff Michael's employment, his work product was excellent and he was never disciplined for his performance.

41. Throughout Plaintiff Michael's employment he worked approximately five (5) shifts each week.

42. Plaintiff Michael's shifts lasted eight (8) hours and started at either 6:00 AM until 2:00 PM or slightly later. At times, Plaintiff Michael worked in excess of five (5) shifts in a week.

43. Plaintiff Michael worked in a position wherein he was tipped, however, he was never provided notice that Defendants intended to take a tip credit.

44. Plaintiff Michael also did not get a wage notice when she started working for Defendants or at any time throughout his employment.

45. Plaintiff Michael received forty dollars ($40.00) in cash each week with a pay stub that included his hours and a claim that he would be paid between $5.00 and $7.50 per hour for each hour worked.

46. Despite the pay stub stating that he was being paid the full $7.50 an hour, Plaintiff Michael

only received small cash payments never exceeding forty dollars ($40.00).

47.    In weeks that Plaintiff Michael worked fewer than five (5) shifts, Plaintiff Michael would receive twenty five dollars ($25.00) rather than forty dollars ($40.00) because he had missed a shift. If he missed two (2) shifts then he was only paid ten dollars ($10.00). This was an illegal deduction.

48.    Plaintiff Michael approached all three individual Defendants, each responded that if they were satisfied with what they made he could stay and if not he could leave.

49.    On one occasion, Plaintiff Michael asked Defendant Ilias Argenas how they came to conclude that each Plaintiff was due only forty dollars ($40.00) for a week. Defendant Ilias Argenas replied that they paid two dollars ($2.00) per hour and then subtracted forty dollars ($40.00) for the social security tax.

50.    Plaintiff Judith began working for Defendants in or around 2010 as a Server.

51.    Throughout Plaintiff Judith's employment, her work product was excellent and she was never disciplined for her performance.

52.    Plaintiff Judith worked approximately six (6) shifts each week until or around 2014, at which point she began working five (5) shifts during most work weeks.

53.    Plaintiff Judith's shifts lasted eight (8) hours and started at either 7:00 AM until 3:00 PM.

54.    At times Plaintiff Judith would work a double shift, however, she was not paid any extra by Defendants for that extra shift.

55.    Plaintiff Judith worked in a position wherein she was tipped, however, she was never provided notice that Defendants intended to take a tip credit.

56.    Plaintiff Judith also did not get a wage notice when she started working for Defendants or at any time throughout her employment.

57.    When Plaintiff Judith first started working for Defendants she was paid ninety five dollars

7

($95.00) in cash each week regardless of how many hours were worked. In or around 2014, Plaintiff Judith's pay was decreased to forty dollars ($40.00) in cash each week.

58. Only after the change was made in 2014 did Plaintiff Judith receive a pay stub that included her hours and a claim that she would be paid $7.50 per hour for each hour worked.

59. Despite the pay stub stating that she was being paid the full $7.50 an hour, Plaintiff Judith only received small cash payments never exceeding the ninety five dollars ($95.00) and forty dollars ($40.00) described herein.

60. While working six (6) shifts each week, Plaintiff Judith would receive only forty dollars ($40.00) if she missed a shift.

61. After the change in her schedule, in weeks that Plaintiff Judith worked fewer than five (5) shifts, Plaintiff Judith would receive twenty five dollars ($25.00) rather than forty dollars ($40.00) because she had missed a shift. This was an illegal deduction.

62. Plaintiff Judith asked Ilias Argenas why she was getting paid less over time and he said it was because people were paying more with a credit card and this somehow justified her getting a lower hourly rate.

63. Plaintiffs were all terminated at the same time when the restaurant suddenly closed in or around December of 2016.

64. Defendants are and were employers under the FLSA and NYLL as they control the work performed by individuals who suffered under their violation of the law, made the decision to specifically violate the law and have an ownership stake in the company. As such, Defendants are jointly and severally liable for the wage and hour violations detailed herein.

65. Defendants failed to provide wage statements and notices to any Plaintiff which were proper and correct and are in violation of the New York Labor Law for this failure.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

66. Class Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

67. Defendants willfully employed Class Plaintiffs in the afore-mentioned enterprise and failed to compensate Class Plaintiffs a minimum wage for all hours worked.

68. Defendants withheld pay from Plaintiffs illegally in violation of the FLSA.

69. Defendants failed to comply with the FLSA caused Plaintiffs and Class Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW

70. Class Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

71. Class Plaintiffs were employees of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.).

72. Defendants failed to pay Plaintiffs any rate of pay for certain hours when they were required to be at work, ready to work, actually performing work and/or traveling to work sites.

73. Defendants' failure to comply with the New York Labor Law minimum wage protections caused Class Plaintiffs to suffer loss of wages and interest thereon.

74. Defendants' failure to pay proper wages for each hour worked was willful.

75. Defendants failed to comply with the NYLL caused Plaintiffs and Class Plaintiffs to suffer loss of wages.

## AS A THIRD CAUSE OF ACTION FOR
## VIOLATION OF NEW YORK LABOR LAW (wage notice and statement)

76. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

77.    At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

78.    At all times relevant herein, defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1) – Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

79.    At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3) – Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

## JURY DEMAND

80.    Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants:

A.  Certifying a Collective Class for all Class Plaintiffs and permitting notice be sent to all Class Plaintiffs with the option to join;

B.  Awarding all wages not paid as required under the FLSA and NYLL, plus liquidated damages under both the NYLL and the FLSA and interest;

C.  Declaring that Defendants' policies and procedures violate the FLSA and NYLL;

D.  Awarding damages to the Plaintiffs and Class Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

E.  Awarding Plaintiffs punitive damages;

F.  Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the

10

action;

G. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
      April 5, 2015

                                      **THE ROSE LAW GROUP, PLLC**

                                      Jesse C. Rose (JR-2409)
                                      3109 Newtown Avenue
                                      Suite 309
                                      Astoria, New York 11102
                                      PH: (718) 989-1864
                                      Fax: (917) 831-4595